GUTSCHENRITTER and another, Respondents, vs. HOSTERMAN, Appellant.

*April 2—April 29, 1930.*

The cause was submitted for the appellant on the briefs of *Sawyer & Gehl* of Hartford, and for the respondents on that of *Russell & Goetz* of Hartford.

OWEN, J. On the 30th day of March, 1925, a note executed by the plaintiffs to the defendant, secured by a mortgage on their farm, was due and unpaid. The amount of the note was $6,000. There was delinquent interest for more than two years. The taxes on the farm were also delinquent for two years. As the result of negotiations the plaintiffs, on said 30th day of March, executed to the defendant a deed of the mortgaged premises and the defendant satisfied the mortgage and released plaintiffs from their indebtedness. Sometime in October, 1926, and more than eighteen months after the execution and delivery of the deed, the defendant sold the farm. This action was brought by the plaintiffs to have such deed declared a mortgage and to compel the defendant to account to them for the amount

by which the proceeds of said sale exceeded the amount due on their indebtedness. The court entered judgment declaring said deed to be a mortgage, and awarded judgment in favor of the plaintiffs for the sum of $614.07, with interest from the date of the sale.

The trial judge filed an opinion in which he expressed the view that the rule laid down in *Lynch v. Ryan,* 132 Wis. 271, 111 N. W. 707, 112 N. W. 427, followed in *Young v. Miner,* 141 Wis. 501, 124 N. W. 660, was applicable to and governed the situation. The rule which he applied is tersely stated in *Lynch v. Ryan,* as follows:

"Where the relation of mortgagor and mortgagee of real estate has been once established between two parties, and it is claimed that by a subsequent deed of the premises by the mortgagor to the mortgagee the equity of redemption has been extinguished and the mortgagee has become the absolute owner of the premises, it must be clearly shown that the conveyance or release was voluntary on the part of the mortgagor, was based on an adequate consideration, was untainted by fraud, and that no advantage was taken of the debtor's necessities to drive a hard bargain. Such transactions will be closely scrutinized, and if the proof be clear and satisfactory that the requirements above named have been observed the transaction will be sustained, otherwise not. In doubtful cases the courts incline to hold that the mortgage relation still exists. These propositions are very well established. (Citing cases.) It is manifest that, where no part of the debt is discharged at the time of the conveyance or release, the change in the relationship of the parties is one in name only and not in substance. A mortgagor cannot gratuitously release his right to redeem or bar himself from exercising it by any agreement, whether made contemporaneously with the mortgage or subsequently thereto."

The trouble with the application of this principle to the instant case is that there is no evidence in this case of fraud, imposition, overreaching, or hard bargaining. The release of the mortgage and the discharge of the indebtedness con-

stituted an adequate consideration for the deed. The fact that eighteen months after the deed was executed the defendant realized an amount for the farm which exceeded the indebtedness by $614 does not impeach the adequacy of the consideration. In *Lynch v. Ryan, supra,* it did not appear that the mortgage indebtedness had been released, in the absence of which there was no consideration whatever for the deed. In *Young v. Miner, supra,* it appeared that the value of the land deeded was two or three times the amount of the mortgage. But no such inadequacy of consideration is here present. The profit which the defendant made upon a sale of the farm eighteen months after the transaction was less than ten per cent. of the amount of the indebtedness. This does not show an inadequate consideration.

It by no means follows from the rule above stated that a mortgagor may not deed the mortgaged premises to the mortgagee in full settlement and discharge of the indebtedness secured by the mortgage. It only means that the transaction will be closely scrutinized by the courts with a view of protecting the mortgagor from overreaching or unconscionable advantage. If he voluntarily chooses to surrender the premises in discharge of the mortgage obligation, and his conduct is not the result of coercion or hard dealing, the law does not deny him the privilege of thus meeting and discharging his obligations. *Kunert v. Strong,* 103 Wis. 70, 79. N. W. 32; *Coates v. Marsden,* 142 Wis. 106, 124 N. W. 1057.

The plaintiffs in this case do not charge any fraud or hard dealing on the part of the defendant. The sole right of the plaintiffs to recover is based upon an alleged agreement on the part of the defendant that he would pay to the plaintiffs any amount he realized from a sale of the farm in excess of their indebtedness to him. The trial court made no findings of fraud or unconscionable dealing on the part of the defendant. In fact, issues of this character were not

presented and were not litigated upon the trial. The only basis for the judgment which appears in the findings of fact is that indicated in finding 6, to the effect "that on the 30th day of March, 1925, the parties met at the office of J. M. Peters, attorney for the plaintiffs, and Edward J. Gehl, representing the defendant, and it was then and there agreed that the plaintiffs should give a deed of the premises to the defendant, and each of the parties would try to dispose of the premises, and whatever the premises would bring over what plaintiffs owed to the defendant was to be paid to the plaintiffs." Unless that finding is contrary to the great weight or fair preponderance of the evidence, the judgment should be sustained; otherwise, not.

It should be here noted that, although not embodied in the deed, it is undisputed that there was an understanding between the parties at the time of the execution of the deed that the plaintiffs had the option of buying the land back upon payment of the amount due on the note and mortgage prior to October 1, 1925. While there is some contention on the part of the plaintiffs that this option was not to expire on October 1, 1925, it is undisputed that they did have that option if exercised by October 1, 1925. That brings the issue in the case to a very narrow compass, the only question being whether this option was to extend beyond October 1, 1925, and, if so, for how long.

The only evidence in the case in support of the contention that the option was to extend beyond October 1, 1925, is to be found in the testimony of Mrs. Gutschenritter. At certain places in her testimony she makes the unqualified statement that there was no limit as to the length of time within which this option could be exercised. However, this broad statement is considerably qualified in other portions of her testimony. Upon cross-examination she says: "I didn't suppose at the time that deed was drawn that we had years to sell it in." In response to the question, "How long

did you figure you had to sell it?" she replied, "The quicker the better. From our talk I figured that we had a year or two at least to sell it in. Something like two years. A year or two. We didn't figure that we had at least two years. The quicker the better, that is the way we figured on. We did not figure in a year or two to sell it in, the sooner the better." And again, in response to the question "How long did you think you had to sell this farm?" she replied, "Well, the quicker the better. Then we could get it settled up. I don't know that if we sold it two years later it would be all right. I can't say we should figure two years to sell it. I don't remember that way. I thought that if we sold it a year later that it would be all right."

Now if this testimony stood alone it is altogether too indefinite and uncertain as to the matter of time to constitute the basis of an enforceable agreement. Her testimony simply gives her understanding of the agreement, and it appears that her understanding certainly was very hazy. As opposed to this, all other testimony, as well as every circumstance in the case, indicates that the option was to expire on October 1, 1925. This was the testimony of the defendant and this also was the testimony of Edward Gutschenritter. While there are to be found some statements in the testimony of Edward Gutschenritter that the plaintiffs were to have an indefinite time within which to exercise the option, his testimony as a whole leaves no doubt as to what the understanding was. He testified that he was advised by his attorney to give the deed and that he was anxious to save the expenses of foreclosure. Upon his cross-examination he testified unqualifiedly that they had until the 1st of October, 1925, to buy back the farm. The deed itself contained this clause: "The grantors, however, reserve to themselves the free use and occupation of said premises up to October 1, 1925, together with all crops raised on said premises up to that time, but second party has the right to go

upon the premises on and after September 15, 1925, to do fall work without injury to growing crops." It appears that plaintiffs remained on the farm in harmony with this agreement until October 1, 1925, and took off the crops. It also appears that in harmony with this agreement, after September 5, 1925, the defendant entered upon the premises and painted the house; that in the month of September, 1925, the plaintiffs advised the defendant that although they had placed the farm in the hands of real-estate agents they had been unable to find a purchaser, and that thereafter they made arrangements with the defendant to lease the farm for another year upon an agreed rental of $20 per month. This provision of the deed and these various acts of the parties are all consistent with the theory that the option to repurchase was coextensive with their right to remain on the farm.

If it can be said that the record discloses any testimony at all in support of the contention that the option extended beyond October 1, 1925, it is certainly against the great weight and fair preponderance of the evidence. The plaintiffs had the burden of proof to establish the agreement necessary for their recovery. *Coates v. Marsden,* 142 Wis. 106, 124 N. W. 1057. They failed to meet this burden, and the only finding of fact upon which the judgment can rest is not supported by the evidence.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the plaintiffs' complaint.